UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 04-cv-02489-WYD

PAULANA M. BARELA,

      Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

      Defendant.

_____

**ORDER**
_____

I.    <u>INTRODUCTION</u>

      THIS MATTER is before the Court on review of the Commissioner's decision that

denied Plaintiff's applications for disability insurance benefits and supplemental

security income benefits under the Social Security Act.  Plaintiff's applications filed

April 15, 2002 (Transcript ["Tr."] at 52) were denied on initial determination.  *Id.* at 45-

49, 249-53.  After a hearing on April 23, 2004 (*id.* at 256-78), Administrative Law Judge

["ALJ"] William J. Musseman issued an unfavorable decision on May 24, 2004, finding

that Plaintiff was not disabled.  *Id.* at 11-22.

      In the decision, the ALJ found at step one of the five-step sequential analysis

that Plaintiff has not engaged in substantial gainful activity [SGA"] since March 26,

2002.  Tr. at 15, 21.  At steps two and three, the ALJ found that Plaintiff has a "severe"

affective disorder but rejected Plaintiff's alleged disability due to a bleeding ulcer and

an enlarged liver. *Id.* at 16. He further found that Plaintiff does not have a physical impairment, or combination of physical impairments, which meets the criteria of any of the listed impairments." Tr. at 16, 18. As to the affective disorder, the ALJ found that the disorder did not meet Parts B and C of Listing 12.04. *Id.* at 18-19.

The ALJ then evaluated Plaintiff's residual functional capacity ["RFC"]. *Id.* at 19-21. He concluded that Plaintiff's "allegation that her impairments, either singly or in combination, produce symptoms and limitations of sufficient severity to prevent all sustained work activity is inconsistent with the medical and other evidence of record and is not considered to be credible." *Id.* at 20. He further stated:

> The medical evidence fails to establish that the claimant has an ongoing medically determinable physical impairment or combination of physical impairments that has resulted in significant vocationally relevant functional limitations. The claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The medical evidence establishes that the claimant does have significant limitations secondary to an affective disorder. However, the . . . evidence also establishes that the claimant's medications, with appropriate adjustments, have been effective in controlling her symptoms. Conversely, the evidence demonstrates a worsening of her symptoms when she does not take her medications are prescribed. No significant and ongoing adverse medication side effects have been reported to the . . . practitioners of record. Consequently, applying the guidelines. . . , the undersigned is unable to find that the claimant has psychologically based symptoms of the frequency, intensity, or persistence that would prevent her from doing any work.

*Id.*

In formulating the RFC, the ALJ relied on the mental RFC assessment of the stage agency examiner that he found to be well supported by the record. Tr. at 20. The ALJ gave "very little weight" to the opinion of Plaintiff''s treating psychiatrist

Dr. McNabb, finding that the opinion was internally inconsistent and inconsistent with the entire record of treatment. *Id.* at 17-18.  He also gave no weight to Dr. Barris's opinion that Plaintiff was unable to work because the finding of disability is an issue reserved to the Commissioner and Dr. Barris's diagnosis of an anxiety order was not diagnosed elsewhere in the record. *Id.* at 21-22.  The ALJ concluded that Plaintiff "has the residual functional capacity to perform work with no physical exertional or nonexertional limitations; no complex tasks (SVP-2 or less); no dealing with the general public; and occasional dealing with coworkers." *Id.* at 20-21.

At step four of the evaluation, the ALJ addressed whether Plaintiff could perform her past relevant work, including presser, delivery driver, and cashier.  Tr. at 21.  The ALJ found, based on the vocational expert's ("VE") testimony, that Plaintiff is not prevented from performing her past relevant work as a presser. *Id.* at 21.  The ALJ thus found at step four that Plaintiff was not disabled within the meaning of the Act. *Id.*

The Appeals Council declined review of the ALJ's determination (Tr. at 5-7), making the case final for judicial review.  This Court has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g).

II.     ANALYSIS

        A.     Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is

evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Although the court should carefully examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

B.    Plaintiff's Arguments

Plaintiff argues that the ALJ erred in rejecting the February 19, 2004 opinion of Dr. McNabb, her treating psychiatrist, and the August 8, 2002 opinion of Dr. Barris, her treating physician. Plaintiff also argues that the ALJ erred in rejecting the July 9, 2002 opinion of Dr. Madsen, a consultative examiner.

I first address the medical evidence regarding Plaintiff's mental impairments, including the relevant opinions of the medical practitioners that Plaintiff argues were improperly rejected, and then conduct an analysis of the ALJ's findings as to same. The record shows that Plaintiff began mental health treatment at the Pueblo Community Health Center ["PCHM"] on April 8, 2002 for issues associated with low self-esteem, depression, and social phobia. Tr. at 145.

On July 9, 2002, at the request of the Disability Determination Services, Plaintiff went to Dr. Richard B. Madsen for a consultative examination to assess the functional

impacts of her mental impairments.  *See* Tr. at 116-118.  Upon presentation,

Dr. Madsen found that Plaintiff was "oriented to person, place and time" but her "affect

[was] blunted and  consistent with a depressed mode." *Id*. at 117.  He further found

that her "[t]hought process [was] nonpsychotic", her "[c]ontent [was] logical and

relevant" but her "motor behavior and speech were slowed." *Id*.  The examination

revealed that Plaintiff's intellectual functioning, fund of knowledge and abstract

reasoning were all impaired. *Id*.  Dr. Madsen diagnosed "Bipolar disorder, circular type,

depressed" and "Alcohol dependence, presently in remission". *Id*.  He assessed a

Global Assessment of Functioning ["GAF"] score of 55.[1]  *Id*.

Dr. Madsen's conclusions and recommendations stated that Plaintiff "appeared

to be significantly depressed and has manic episodes" and that Plaintiff's "ability to do

work-related activities at age-appropriate level will be impaired because of all these

symptoms." *Id*.  He further found that "[s]he would have difficulty maintaining a regular

work schedule, difficulty relating to peers, supervisors, and the general public." *Id*.

Finally, he stated that Plaintiff "should probably, at least in the beginning, have a payee

for her benefits because of her recent history of alcohol dependence." *Id*. at 117-18.

After Dr. Madsen's diagnosis of bipolar disorder, Plaintiff was referred to

Spanish Peaks Mental Health Center ["SPMHC"].  The evidence from PCHM is that it

---

[1]  A GAF score between 51 and 60 indicates "[m]oderate symptoms (e.g. flat effect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers)."  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition (2000).

made this referral because there were no psychiatrists at PCHM who were able to "assess, prescribe, and monitor medications needed for this disorder." *Id*. at 146.

On July 18, 2002, a state agency medical consultant, Dr. Ryan, completed a RFC assessment at the request of DDS.  Tr. at 127-130.  Dr. Ryan did not examine Plaintiff but reviewed medical records.  *See id.* at 129.  She found that Plaintiff was moderately limited in areas involving understanding and memory (e.g., the ability to understand and remember detailed instructions), sustained concentration and pace (including the ability to carry out detailed instructions, the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, the ability to work in coordination with or proximity to others without being distracted by them, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms), social interaction and adaptation. *Id*. at 127-28.

Dr. Ryan opined that with abstinence from alcohol and continued treatment Plaintiff:

> should improve in next 12 mos to where her sxs/impt may occasionally prevent completion of normal workday/wek or cause reduced pace. hwoever [sic], she should be able to maintain attendance/pace within customary tolerances when work does not require more than [s]imple [sic] instructions, ordinary routines and simple decision making.  Her public contact should be limited.

*Id*. at 120.  Dr. Ryan also found that Plaintiff had mild restrictions of activities of daily living, mild to moderate difficulties in maintaining concentration, persistence, or pace and moderate difficulties in maintaining social functioning.  *Id*. at 141.  Finally, Dr. Ryan

concluded that Plaintiff did not meet the listings, including Listing 12.04 for affective disorders or 12.08 for substance addition disorders. *Id.* at 131-34.

On August 8, 2002, Dr. Barris, Plaintiff's treating physician at PCHM, offered his opinion of Plaintiff's work capacity. Tr. at 148-49. The opinion was in the form of a questionnaire provided to Dr. Barris by the Colorado Department of Human Services. Dr. Barris diagnosed generalized anxiety disorder with depressive features and alcohol induced cirrhosis. *Id.* at 148. He opined that Plaintiff had no work capacity, stating that the disability would last one year and that "treatment of mental illness" would allow Plaintiff to become employable. *Id.* at 148-49.

The record indicates that on January 30, 2003, in a session with PCHM, Plaintiff's psychotherapist noted that Plaintiff indicated she was "thinking crazy things" and that "being dead would be better." *Id.* at 147. The psychotherapist was concerned for Plaintiff's "sad demeanor and the hopelessness and lack of any alternatives" and felt that an evaluation for hospitalization was appropriate. *Id.* Plaintiff was not ultimately hospitalized but began treatment at SPMHC. *Id. Id.* at 177-243.

It appears that Plaintiff began treatment with SPMHC on January 30, 2003. Tr. at 202-08. On initial presentation at SPMHC, Plaintiff was diagnosed with depressive and psychotic disorders and alcohol dependence in early remission and given a GAF of 40, indicative of serious symptoms. *Id.* at 198, 206. On March 5, 2003, Dr. Jon Westcot noted Plaintiff's guarded and blunt affect and dysthymic mood and diagnosed bipolar disorder with psychotic features and a GAF of 55. *Id.* at 191. He prescribed

Zoloft and Zyprexa.  *Id*.  On August 26, 2003, a "Treatment Update" indicated the same diagnosis and a GAF of 50.  *Id*. at 237.[2]

On February 19, 2004, Dr. McNabb, Plaintiff's treating psychiatrist at SPMHC, completed a Mental Impairment Questionnaire that summarized his conclusions as to Plaintiff's ability to do work related functions.  Tr. at 238-243.  He reiterated the diagnosis of bipolar disorder, gave a GAF score of 55, and described clinical findings that included severe psychomotor agitation, depressed mood, insomnia, paranoid ideation, and "severe anxiety, esp. social."  *Id*. at 238.  Dr. McNabb identified numerous symptoms experienced by Plaintiff, *id*. at 239, and found a number of impairments of mental abilities and aptitudes needed for unskilled work.  *Id*. at 240-41.  As to functional limitations, he found moderate restrictions of activities of daily living, marked difficulties in maintaining social functioning, extreme deficiencies of concentration, persistence or pace, and four or more repeated episodes of decompensation.  *Id*. at 242.

Dr. McNabb concluded that Plaintiff's mental impairments affected her ability to work and "resulted in such marginal adjustment that evan a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate."  *Id*.  He further found that Plaintiff's impairments would cause her to be

---

[2]  A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job).  *See Lee v. Barnhart*, 117 Fed. Appx. 674, 678, 2004 WL 2810224 (10th Cir. 2004) (quoting Diagnostic and Statistical Manual of Mental Disorder 34 (4th ed. 2000)).  "Standing alone, a low GAF score does not necessarily indicate an impairment seriously interfering with a claimant's ability to work."  *Id*.  "The claimant's impairment, for example, might lie solely within the social, rather than the occupational, sphere."  *Id*.  "A GAF score of fifty or less, however, does suggest an inability to keep a job."  *Id*.

absent from work more than four days per month.  Finally, he found that Plaintiff's impairments lasted or can be expected to last at least 12 months.  *Id.*

I first address the ALJ's findings as to Dr. McNabb, Plaintiff's treating psychiatrist.  In conducting my analysis, I note that an ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'"  *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted); *see also* 20 C.F.R. § 404.1527(d)(2); Soc. Sec. Ruling 96-2p.  However, a treating physician's report can be rejected "if it is brief, conclusory and unsupported by medical evidence" or is "not supported by specific findings."  *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988).  "The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled."  *Goatcher v. U.S. Dept. of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).

In this case, the ALJ stated that he gave "little weight" to Dr. McNabb's findings.  Tr. at 17-18.  I find that the ALJ erred in his findings as to Dr. McNabb, as they are not supported by substantial evidence.  The ALJ found, for example, that Dr. McNabb's assessment "is not supported by objective medical findings."  *Id.* at 18.  This is erroneous, as it patently ignores the clinical findings made by Dr. McNabb as a result of the psychiatric examination, including severe psychomotor agitation, depressed mood, insomnia, paranoid ideation, and severe anxiety.  Tr. at 238.  The evaluation and the

clinical findings made as a result are objective medical findings.  *See Thomas v.*

*Barnhart*, 147 Fed. Appx. 755, 759, 2005 WL 2114163 (10th Cir. 2005) ("[a]

psychological opinion . . . 'may rest either on observed signs or on psychological

tests'") (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004)).

        The ALJ also rejected Dr. McNabb's opinion on the basis that it was contrary to

or inconsistent with the other medical evidence.  Tr. at 18.  He noted as a basis for this

finding that the treatment records from SPMHC "show overall improvement in the

claimant's symptoms."  *Id.*; *see also* Tr. at 17 (the medical records from SPMHC from

April 2003 through December 2003 essentially note improvements in Plaintiff's

depression).  The ALJ further stated that the entire record "when viewed longitudinally"

demonstrates "no more than moderate limitations."  *Id.*  I find that the ALJ selectively

applied the evidence in making this finding.

        First, I note that the diagnosis and findings of Dr. McNabb are generally

supported by the findings of Plaintiff's treating physician Dr. Barris, by Dr. Westcot at

SPMHC, and by the consultative examiner Dr. Madsen.  The only physician that

appeared to disagree with Dr. McNabb's findings as to the severity of Plaintiff's

impairments was Dr. Ryan, the state agency consultant who did not actually examine

Plaintiff.  Even Dr. Ryan, however, opined that Plaintiff had mild to moderate mental

impairments and that these impairments might occasionally prevent the completion of a

normal workday or work week.  Tr. at 120, 127-28.

        Second, as to the ALJ's reliance on treatment notes from PCHM as supportive of

his opinion (Tr. at 16), these notes do indicate that Plaintiff made some progress in

dealing with self-esteem and dealing with depression.  However, the ALJ failed to address the fact that at the end of Plaintiff's treatment at PCHM, the psychotherapist recommended that Plaintiff be evaluated for hospitalization due to her extreme mental distress.  *See id.* at 147.  As to the treatment notes of SPMHC, while there are positive findings in the notes related to Plaintiff's speech, psychomotor agitation, mood and thoughts, and comments that Plaintiff was feeling her symptoms had improved, the notes from March through November 2003 consistently refer to a depressed mood and other serious mental impairments.[3]  These notes show only that Plaintiff's mood and mental impairments fluctuate -- they do not show a pattern of overall improvement. "The ALJ may not simply pick out portions of a medical report that favor denial of benefits, while ignoring those favorable to disability."  *Lee v. Barnhart*, 117 Fed. Appx. 674, 678, 2004 WL 2810224 (10th Cir. 2004).

The ALJ also gave little weight to Dr. McNabb's opinion on the basis that it was internally inconsistent.  He noted Dr. McNabb's finding that Plaintiff has a limited capacity for routine decision making while also finding that Plaintiff is capable of

---

[3]  *See, e.g.*, 177 (Plaintiff was feeling like giving up), 181 (continuing to have decreased sleep, poor attention/concentration and feeling paranoid), 182 (continuing to report 2-3 hours sleep, anxiety and depression, hallucinations are present but not as prominent, affect blunted, mood depressed), 183 (affect blunted, mood depressed), 186 (increasing depression and feelings of hopelessness), 184 (feeling really depressed and increased hallucinations), 197 (tearful and depressed affect and mood), 200 (blunted affect, depressed mood), 216 (depression reported, with decreased concentration and lack of interest, and anxiety and panic attacks), 221 (report of some suicidal ideation and feelings of hopelessness), 222 (alcohol relapse and not taking medication, depressed mood), 226 (report of significantly improved depression but continued problems with concentration and focus, flat affect), 225 (slightly depressed mood and severe difficulty with concentration, focus and memory), 228 (Plaintiff feeling anxious, having difficulty focusing, hearing voices and feeling like someone was watching her, difficulty maintaining focus), 237 (GAF score of 50 assessed indicating serious symptoms despite reports that Plaintiff felt better emotionally and had better concentration and memory), 230 (depressed mood, ongoing fluctuation in mood).

handling her own funds which, according to the ALJ, "requires routine decision making, as well as some judgment." *Id.* at 17-18.  The ALJ also noted the finding that Plaintiff has memory deficits as inconsistent with the finding on the former mental status examination that Plaintiff had average short-term auditory memory.  *Id.*  I find the ALJ is improperly substituting his lay judgment for that of Dr. McNabb on these issues.

The Tenth Circuit has noted that "'[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion.*'"  *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (emphasis in original) (quotation omitted).  In this case, simply because Plaintiff was found to have average short-term auditory memory does not necessarily mean that she has no other memory problems.  Similarly, the fact that Plaintiff was found to be able to handle personal funds does not necessarily mean that she cannot have problems with routine decision making in other areas.  The ALJ was not entitled to assume otherwise without contradictory medical evidence.  Further, if he truly thought these findings were inconsistent, he should have made inquiry to Dr. McNabb to explain the inconsistency.  *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (citing 20 C.F.R. § 404.1512(e)(1) (2001)).

I also find that the ALJ erred in rejecting outright Dr. McNabb's assessment that Plaintiff met the requirements of Listing 12.04.  *See* Tr. at 18.  The ALJ found in that regard that Dr. McNabb's finding of overall moderate limitations was not consistent with

a finding that Plaintiff meets Part B of the Listing.  *Id*.  Similarly, the ALJ rejected

Dr. Madsen's findings that supported Dr. McNabb's assessment, since Dr. Madsen

gave a GAF score of 55 which the ALJ found to be inconsistent with a finding that

Plaintiff meets the requirements of Part B of the Listing.  However, I find that this was

not an adequate reason to reject these opinions.  First, this improperly involves a lay

judgment of the ALJ, *i.e.*, whether someone can have a GAF of 55 can still meet the

requirements of the Listing requires a medical opinion.  *See also Lee*, 117 Fed. Appx.

at 678 (10th Cir. 2004) (recognizing that there are different spheres that the GAF score

measures).   Second, if the ALJ thought the findings were truly inconsistent, as stated

earlier, he should have contacted Dr. McNabb and/or Dr. Madsen to obtain an

explanation before rejecting their opinions.  *McGoffin*, 288 F.3d at 1252.

Aside from the errors noted above, I also find that the ALJ erred in the way he

weighed Dr. McNabb's findings.  While the ALJ stated that he gave the decision "little

weight", it appears that he essentially rejected Dr. McNabb's opinion in its entirety and

chose instead to rely on the findings of Dr. Ryan, the state agency consultant.

However, when an ALJ decides that a treating physician's opinions are not dispositive

and not entitled to controlling weight, that does not allow him to reject the opinions

outright.  *Langley*, 373 F.3d at 1120.  Instead, the treating physician's opinions are

"'still entitled to deference and [should be] weighed using all of the [relevant] factors.'"

*Id*. (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).  The ALJ's

opinion does not reflect that he gave Dr. McNabb's findings  deference and weighed

them, that he gave any consideration of what lesser weight the opinion should be given, or that he discussed the relevant factors set out in 42 U.S.C. § 404.1527.  *Id.*

I also note that while the ALJ was not required to give controlling weight to Dr. McNabb's assessment that Plaintiff would not be able to meet competitive standards (*see* Tr. at 17), this does not provide a basis to reject the opinion.  The same is true of Dr. Barris's opinion of Plaintiff's work capacity, which the ALJ rejected outright.  *Id.* at 20.  The ALJ is not entitled to ignore these findings, but must evaluate them to the extent they have a bearing on the issue of disability.  *Miller v. Barnhart*, 43 Fed. Appx. 200, 2002 WL 1608452, at *3 (10th Cir. 2002) ("[t]he adjudicator is required to evaluate all evidence in the case . . . including opinions from medical sources about issues reserved to the Commissioner").  *Id.*[4]

I now turn to the ALJ's findings regarding Dr. Madsen, the consultative examiner. I previously found that the ALJ erred in rejecting the more serious impairments found by Dr. Madsen based on his assigned GAF score of 55.  I also find that the ALJ erred in connection with the other reasons he provided to give "little weight" to Dr. Madsen's findings.[5]  First, the ALJ appeared to reject Dr. Madsen's finding that Plaintiff's intellectual functioning was impaired on the basis that Dr. Madsen did not measure Plaintiff's intellectual functioning with any standardized test instrument.  Tr. at 16.  The

---

[4]  As to the ALJ's other stated basis to reject the opinion of Dr. Barris, *i.e.*, that the record does not establish a "definitively diagnosed and ongoing anxiety disorder" (Tr. at 21), the record contains numerous references to anxiety on the part of Plaintiff and the ALJ failed to properly consider that evidence.

[5]  While the ALJ stated he gave "little weight" to Dr. Madsen's findings of serious impairments, he actually appeared to give these findings no weight.  This is an important distinction.

ALJ also rejected the finding that Plaintiff would require a representative payee as "at variance with the fact that the claimant has been the primary caregiver for her mother since 1995" which according to the ALJ, "would seem to indicate that she has the ability to exercise some judgment." *Id.* at 16-17.  These decisions are improperly based on lay judgments by the ALJ.  The ALJ also rejected some of Dr. Madsen's conclusions because they "are admittedly based on the claimant's history of alcohol dependence" that had been in remission for two years. *Id.* at 17.  However, this is not substantiated by the record.  Dr. Madsen does not tie his conclusions to Plaintiff's history of alcohol dependence, which he diagnoses as "in remission", but to his own objective findings based on a psychiatric examination of Plaintiff. *Id.* at 117.

The ALJ also erred in another important respect in connection with Dr. Madsen's findings.  He stated that he accepted Dr. Madsen's assessment of moderate limitations as consistent with the subsequent medical records.  Tr. at 17.  However, the ALJ's RFC did not reflect any of the "moderate" findings made by Dr. Madsen.  For example, Dr. Madsen opined that Plaintiff would have difficulty maintaining a regular work schedule and difficulty relating to peers and supervisors   These findings were not included in the RFC or in the hypothetical question given to the VE.  If the ALJ truly did accept these limitations, he erred in providing no explanation as to why they were not included in the RFC and hypothetical question. *See Wiederholt v. Barnhart*, 121 Fed. Appx. 833, 2005 WL 290082, *5 (10th Cir. 2005) ("[b]ecause the ALJ omitted, without explanation, impairments that he found to exist . . . , the resulting hypothetical question was flawed").

-15-

Finally, I turn to the finding of the state agency consultant, Dr. Ryan.  The ALJ found that Dr. Ryan's opinion was "well supported by the evidence upon which it was based" and was "consistent with the record as a whole, i.e., is not inconsistent with the substantial evidence since July 18, 2002." Tr. at 18.  Accordingly, the ALJ accepted Dr. Ryan's opinion in finding that Plaintiff's impairments were not of listing severity. *Id.* The ALJ also relied on Dr. Ryan's opinion in making the RFC determination. *Id.* at 20.

Since I find that the ALJ did not properly weigh the treating physicians' and Dr. Madsen's findings, the ALJ's reliance on Dr. Ryan's opinion must be reassessed on remand.  I note, however, several errors I find in connection with the ALJ's decision to rely on Dr. Ryan's opinion.  First, the ALJ's finding that Dr. Ryan's opinion is consistent with the record does not appear to be supported by substantial evidence given my earlier findings.  Second, evaluations by consultative examiners such as this are insufficient to constitute substantial evidence where they are not accompanied by thorough written reports or testimony. *Hamlin v. Barnhart*, 365 F.3d 1208, 1223 (10th Cir. 2004).  Third, Dr. Ryan's conclusion that Plaintiff should improve in the next 12 months with continued treatment and with abstinence from alcohol appears to be speculative.  Even if this conclusion is based on a reasonable degree of medical probability, this opinion must actually be substantiated by the record of Plaintiff's future treatment.  I do not believe the record necessarily supports this conclusion.  Finally, the

RFC assessed by the ALJ and the hypothetical question given to the VE did not include many of the impairments found by Dr. Ryan, which was not explained by the ALJ.[6]

In conclusion as to the medical evidence, the ALJ improperly rejected the opinions of the treating psychiatrist and all other medical practitioners that examined Plaintiff and relied on the findings of a state agency examiner who did not examine Plaintiff and merely filled out an RFC assessment.  The ALJ did not properly weigh the opinions of the medical providers and gave reasons to reject their opinions that are not supported by the record.

On remand, the Commissioner is ordered to properly weigh the medical evidence.  This will require the Commissioner to reassess whether Plaintiff meets the Listings at step three (specifically, Listing 12.04 which Dr. McNabb's opinion seems to support) and Plaintiff's RFC.  Since this may impact the findings on step four, I need not address Plaintiff's argument that the Commissioner erred at that step in finding that Plaintiff can perform her past relevant work.[7]

_____

[6]  In that regard, Dr. Ryan opined that Plaintiff had mild restrictions of activities of daily living, mild to moderate difficulties in maintaining concentration, persistence, or pace and moderate difficulties in maintaining social functioning.  Tr. at 141.  She also found numerous impairments in connection with understanding and memory, sustained concentration and pace, social interaction, and adaptation.  Tr. at 127-28.  She concluded that even if Plaintiff's symptoms improved over the next 12 months, they would occasionally prevent completion of a normal workday or work week.  Tr. at 120.  This latter finding actually supports the findings of Drs. Madsen, McNabb and Barris

[7]  Also on remand, I find that the Commissioner needs to reassess the ALJ's credibility findings.  Some of these findings do not appear to be substantiated by the record.  For example, the ALJ found that "[n]o significant and ongoing side effects [of medication] have been reported to the . . . practitioners or record."  The record does, however, demonstrate complaints of side effects.  *See, e.g.*, Tr. at 238 (side effects of medication include stomach upset and lethargy).  Further, the ALJ's finding that Plaintiff's medications have been effective in controlling her symptoms (tr. at 20) may not be substantiated in the record, based on the evidence discussed in this Order.  Although credibility findings are generally left to the ALJ, "'[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted).

-17-

III.   <u>CONCLUSION</u>

Based upon the errors described above, I find that this case must be reversed

and remanded for further fact finding consistent with this Order.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner

pursuant to 42 U.S.C. § 405(g) to make further findings consistent with this Order.

Dated February 23, 2006

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge